**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JAYSON PEREZ VEGUILLA,

     Plaintiff,

v.                                    Case No. 8:25-cv-3114-JLB-TGW

NAPHCARE, *et al.*,

     Defendants.

_____/

## **ORDER**

Before the Court is Plaintiff, a pretrial detainee proceeding *pro se*, Jayson Perez Veguilla's amended complaint (Doc. 10), which is before the Court for initial screening. After careful review, the Court dismisses the amended complaint with leave to amend because it does not state a claim on which relief may be granted against some defendants.

I. Screening Standard

A prisoner who seeks to proceed *in forma pauperis* in federal court will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(a) ("The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). This screening procedure requires the court to dismiss a prisoner's civil action before service of process if it determines

that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.   *See* 28 U.S.C. § 1915(e)(2)(B)(i)−(iii); 28 U.S.C. § 1915A(b)(1), (2).

The rules governing dismissals for failure to state a claim under the screening statutes are largely the same as those under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).   And under Rule 12(b)(6), a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A complaint may not rest on "'naked assertions[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).   Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   Likewise, a complaint may be dismissed as frivolous when the Court discerns from its face "that the factual allegations are clearly baseless or that the legal theories are indisputably meritless."   *Davis v. Kvalheim*, 261 F. App'x 231, 235 (11th Cir. 2008) (quoting *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotation marks omitted)).

II. Allegations

Plaintiff asserts the following:[1] On October 30, 2024, while detained in Manatee County Jail in his cell, Plaintiff had intense chest pain with pain running down his arm.   (Doc. 10-1 at 1).   He pushed the emergency call button in his cell to request help from the control room operator.   (*Id.*).   After twenty minutes, Plaintiff pushed the button again because no one had responded.   (*Id.*).   After ten more minutes, Plaintiff's pain increased, and he exited his cell and went to the "day room" where he pressed another emergency button and started banging on the "main door."   (*Id.* at 1-2).

Plaintiff continued to bang on the door when he saw Deputy Mecca escorting another prisoner.   (*Id.* at 2).   Deputy Mecca asked Plaintiff what was wrong, and Plaintiff told him that his chest was hurting.   (*Id.*).   Deputy Mecca had the control room operator open the door and told Plaintiff to sit down.   (*Id.*).   Deputy Mecca then escorted Plaintiff to the medical unit.   (*Id.* at 3).

When they arrived at the medical unit, Nurse Sterling told Plaintiff to sit down on a bench.   (*Id.*).   Plaintiff sat there for "several" minutes while yelling that his neck, back, chest, teeth, and arms hurt, and his "breath was out of control."

---

[1] At the screening stage, the Court accepts the complaint's factual allegations (but not its legal conclusions) as true and considers them in the light most favorable to Plaintiff.   *See Williams v. Board of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

(*Id.*).   After several more minutes, Plaintiff yelled for help.   (*Id.* at 10).   Because Nurse Sterling was ignoring him, Plaintiff began yelling that he could not breathe and was going to faint.   (*Id.*).   Nurse Sterling told Plaintiff to "quiet down" and that he just "had gas."   (*Id.*).

Nurse Watters walked down the hallway and noticed that Plaintiff was sweating.   (*Id.*).   She took Plaintiff's blood pressure, which was high.   (*Id.*).   She brought Plaintiff to the "EKG Room."   (*Id.*).   Nurse Watters noticed that the EKG machine's wires were tangled and asked Nurse Sterling and Dr. Quillian for help.   (*Id.*).   However, Nurse Sterling said she needed to go to the restroom, and Dr. Quillian ignored Nurse Watters.   (*Id.*).   Ms. Sterling returned and told Plaintiff to "stop faking it."   (*Id.* at 4).

Deputy Corsy escorted Plaintiff to a bench where Plaintiff "died."   (*Id.*).   Plaintiff awoke in an ambulance, where he "died twice."   (*Id.*).   Plaintiff had a heart attack and was resuscitated three times.   (Doc. 10 at 5).   Plaintiff had two stents placed in his arteries and requires heart medication for the remainder of his life.   (*Id.*).

III. Discussion

Plaintiff names as defendants Dr. Quillian, Nurse Sterling, and Naphcare, the private company that provides medical services to Manatee County Jail.   (Doc. 10 at 2-3).   He contends that Defendants were deliberately indifferent to his

4

serious medical needs in violation of his rights under the Fourteenth Amendment and committed medical malpractice.    (Doc. 10 at 3, 5; Doc. 10-1 at 4).

A. NaphCare

NaphCare "performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent" of the county under 42 U.S.C. § 1983.    *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997).    However, NaphCare cannot be liable for its employees' acts merely on a theory of respondeat superior.    *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997).    Plaintiff must show some affirmative link or connection between NaphCare's actions and the claimed deprivation or show that a constitutional violation occurred or was caused by a NaphCare policy or custom.    *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 694 (1978).    Plaintiff alleges that NaphCare employs Nurse Sterling and Dr. Quillian, and they delayed or denied him medical care for his serious medical need.    These allegations are insufficient to show that a NaphCare policy or custom caused the alleged constitutional violation.    Consequently, Plaintiff fails to state a claim against NaphCare.

B. Dr. Quillian and Nurse Sterling

Plaintiff contends that Dr. Quillian and Nurse Sterling were deliberately indifferent to his serious medical needs and committed medical malpractice. Pretrial detainees have a right to adequate medical care under the Due Process

5

Clause of the Fourteenth Amendment.    *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985).    The minimum standard of medical care required by the Due Process Clause is identical to the standard for convicted persons under the Eighth Amendment.    *Id.*    Accordingly, to prevail on a section 1983 claim for inadequate medical care, a pretrial detainee must demonstrate that jail officials acted with deliberate indifference to the detainee's medical needs.    *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To state a claim of deliberate indifference for the deprivation or denial of medical attention, a prisoner must allege: (1) a serious medical need; (2) deliberate indifference to that need by the defendant; and (3) causation between the defendant's indifference and the plaintiff's injury.    *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010).    The Eleventh Circuit has clarified that, to establish subjective deliberate indifference, a plaintiff must show that the defendant acted with the type of "subjective recklessness" defined in criminal law.    *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024).    And to do so, the plaintiff must show that the defendant "was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff."    *Id.*    The court further clarified that even if the defendant was aware of a risk of serious harm to the plaintiff, he still could not be liable under the Eighth Amendment if he responded

6

reasonably to that risk.   *Id.*   To that end, the Supreme Court has cautioned that not every allegation of inadequate medical treatment states a constitutional violation.   "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind."   *Estelle*, 429 U.S. at 105-106 (internal quotation marks omitted).   And "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."   *Id.* at 106.

Here, the only allegation Plaintiff makes about Dr. Quillian is that he ignored Nurse Watters when she asked him and Nurse Sterling to help her with the tangled wires on the EKG machine.   (Doc. 10-1 at 3).   The allegation fails to show that Dr. Quillian knew Plaintiff was having symptoms of a heart attack and ignored those symptoms.   Thus, the allegation is insufficient to show that Dr. Quillian knew that Plaintiff suffered from a substantial risk of serious harm, yet callously and deliberately chose to disregard that knowledge so that he could withhold treatment.[2]

---

[2] Plaintiff's allegations are sufficient to show that Nurse Sterling knew of Plaintiff's symptoms and complaints but delayed treatment.   Thus, at this stage of the proceedings, there are sufficient allegations supporting Plaintiff's deliberate indifference claim against Nurse Sterling.

To the extent Plaintiff brings a state law claim for medical malpractice against Defendants, Chapter 766 of the Florida Statutes "imposes certain notice and presuit screening requirements" on plaintiffs who wish to bring "medical malpractice and medical negligence actions." J.*B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948 (Fla. 1994); *see also* Fla. Stat § 766.106(2)–(3). Compliance with these requirements is considered a condition precedent for filing a medical malpractice action. *See Ingersoll v. Hoffman*, 589 So. 2d 223, 224 (Fla. 1991). The remedy for failing to comply with Chapter 766 depends on the timing of the case. If the two-year statute of limitations for bringing a medical malpractice claim has not yet elapsed, Florida courts may dismiss with leave to amend—that is, with leave to properly comply with the requirements (or to allege that they complied). *See* Fla. Stat. § 95.11(4)(b); *Groover v. Polk Cnty. Bd. of Cnty. Comm'rs*, 460 F. Supp. 3d 1242, 1257 (M.D. Fla. 2020) (citing S. *Neurosurgical Assocs., P.A. v. Fine*, 591 So. 2d 252, 255 (Fla. 4th DCA 1991)). But if the limitations period has expired, leave to amend would be futile. *See Johnson v. McNeil*, 278 F. App'x 866, 872 (11th Cir. 2008).

Because Plaintiff has failed to allege that he complied with the presuit requirements of Chapter 766, his medical malpractice claim must be dismissed without prejudice. *See Russoniello v. Lab. Corp. of Am. Holdings*, 2009 WL 10670810, at *2 (M.D. Fla. June 8, 2009) ("If a court finds that a claimant has not

8

complied with presuit procedures prior to filing his complaint, § 766.206(2), Florida Statutes instructs the court to dismiss the action") (citation omitted).

Accordingly:

1. The amended complaint (Doc. 10) is **DISMISSED WITHOUT PREJUDICE**.

a. If Plaintiff wishes to amend his allegations to remedy the noted deficiencies, he shall file a second amended complaint within THIRTY DAYS of the date of this order.

b. To amend his complaint, Plaintiff must complete a new civil rights complaint form titled "Second Amended Complaint."   The second amended complaint must include all of Plaintiff's claims and may not refer to or incorporate the original complaint or the amended complaint.   The second amended complaint shall supersede all prior complaints.   *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

c. The second amended complaint shall be subject to initial screening under 28 U.S.C. § 1915.

2. If Plaintiff fails to file a second amended complaint within thirty days or fails to seek an extension of time, this action will proceed on the amended complaint solely on Plaintiff's claim that Nurse Sterling violated his rights under the Fourteenth Amendment.

3. The Clerk is **DIRECTED** to mail to Plaintiff a copy of both the standard civil rights complaint form and this order.

**DONE and ORDERED** in Tampa, Florida, on May 6, 2026.

_____
**JOHN L. BADALAMENTI**
UNITED STATES DISTRICT JUDGE

10